UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELIZABETH V. CYRAN and FRANKLIN J. CYRAN, ) ) ) ) Plaintiffs, ) ) v. ) ) SOVEREIGN BANK, ) ) Defendant. ) ) | Civil Action No. 07-40263-FDS |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

This is an action for breach of contract, with jurisdiction based on diversity of citizenship. Plaintiffs Elizabeth and Franklin Cyran allege that defendant Sovereign Bank improperly honored disbursement checks issued jointly to plaintiffs and their construction contractor, notwithstanding the fact that the negotiated checks were not endorsed by plaintiffs. Specifically, the Cyrans assert claims for breach of contract and violation of Mass. Gen. Laws ch. 93A.

Sovereign has moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion will be denied.

**I.   Background**

The following facts are taken as true for the purposes of the present motion.

The Cyrans are citizens of Hardwick, Massachusetts. Sovereign Bank is a federally

chartered savings association with a home office in Pennsylvania.  *See* 12 U.S.C. 1464.[1]

On June 9, 2003, the Cyrans entered into a construction contract with Yankee-Crafted Homebuilding, Inc., for the construction of a single-family residence in Hardwick.  The contract price for the home (subject to additions or deductions via change order) was $247,300.

On July 15, 2003, the Cyrans entered into a mortgage loan agreement with Sovereign in the amount of $225,000 in order to pay for the construction.  As part of that agreement, the parties executed a "Loan Advance Schedule."  Pursuant to that schedule, there were to be six separate disbursements to Yankee, each made after it reached a specific construction milestone: (1) a $14,795 disbursement upon completion of "excavation, well, footings, foundation walls," (2) a $61,825 disbursement after "first floor joist and decking, frame and sheath exterior walls, interior partitions, exterior doors and windows installed, roof shingled," (3) a $61,825 disbursement after "concrete floors poured, exterior siding, rough electric, rough heating and rough plumbing," (4) a $24,730 disbursement after "fireplace, sheetrock, septic system installed, furnace installed," (5) a $37,095 disbursement after "interior trim, cabinets, painting and staining, finish electric, plumbing and heating," and (6) a $24,730 disbursement after "finish flooring and C.O."  (Complt., Ex. A).

The parties also executed a document entitled "Procedures for Construction Loan Payouts" that detailed how mortgage funds would be released.  The agreement stated in relevant part:

1. All requests for payouts must be made in writing and forwarded to Sovereign Bank . . . .

---

[1] The defendant is erroneously referred to as "Sovereign Bank New England" in the complaint.

>   2.   Arrangements must be made [with] the Bank's Construction Department to inspect the property.
>
>   3.   Upon release of a satisfactory inspection report, funds will be released in accordance with our Loan Advance Schedule. Checks will be made payable to the Borrower(s) and the Contractor and mailed to the Contractor. If the Borrower(s) so elects, Borrower(s) may make a written request that the Bank is to issue a check solely in the Contractor's name. . . .

(Complt., Ex. B).

On August 12, 2003, Sovereign issued a $22,300 check made payable to both the Cyrans and Yankee. (Complt., Ex. C).[2] This check was mailed to Yankee. Yankee negotiated the check at Fleet Bank and obtained the funds from Sovereign without obtaining the Cyrans' endorsement. On September 25, 2003, Sovereign issued a $61,825 check made payable to both the Cyrans and Yankee. (Complt., Ex. D). This check was also mailed to Yankee, and Yankee again negotiated the check at Fleet and obtained the funds from Sovereign without obtaining the Cyrans' endorsement.[3]

In April 2004, the Cyrans terminated their contract with Yankee, contending that the construction was defective and incomplete. On April 9, and again on May 13, the Cyrans demanded a refund from Sovereign to their loan account in the amount of $61,825 on the grounds that they had not endorsed the September 25 check. On April 27, a Sovereign representative informed the Cyrans that she would file a demand for reimbursement with Fleet Bank, the bank that (apparently) accepted the check for deposit:

---

[2] The reason for the difference in amount from the Loan Advance Schedule (which called for a first payment of $14,795) is unclear.

[3] At some point between August and December 2003, two other checks were also issued by Sovereign pursuant to the mortgage loan. Those checks are apparently not disputed.

> Please be advised that I am preparing and will file with Fleet Bank a demand for reimbursement for the face amount on the check on the basis that two necessary endorsements are missing from the reverse of the check.

(Complt., Ex. E). On May 19, Sovereign informed the Cyrans that Fleet had rejected the demand for reimbursement, and that accordingly Sovereign would not credit the disputed $61,825 to the account.

On December 13, 2004, the Cyrans served upon Sovereign a written demand for relief pursuant to Mass. Gen. Laws ch. 93A.[4] Sovereign disclaimed liability and did not respond with an offer of settlement. On September 21, 2007, the Cyrans filed a complaint against Sovereign in the Superior Court. Sovereign then removed the case to this Court.

**II.   Analysis**

    **A.   Standard of Proof**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, - - - U.S. - - - , 127 S. Ct. 1955, 1966-67, 167 L. Ed.2d 929 (2007)). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 513 F.3d at 305 (*quoting Centro Medico del Turabo*, *Inc.*, *v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)). The Court need

---

[4] The Chapter 93A demand letter made reference to two allegedly improperly disbursed checks (for $22,300 and $61,825, respectively). It is unclear from the record whether the Cyrans had informed Sovereign of any problem with the $22,300 check before that point.

not consider "bald assertions [or] unsupportable conclusions." *Doyle v. Hasbro, Inc.*, 103 F.3 186, 190 (1st Cir. 1996).

## B. <u>Breach of Contract</u>

Defendant contends that (1) the plaintiffs' common-law breach of contract claim is preempted by the Uniform Commercial Code ("UCC"), and (2) even if the claim is not preempted, the complaint fails to assert a cognizable claim for breach of contract. The Court will consider each theory in turn.

### 1. <u>Preemption</u>

Plaintiffs contend they have at least two possible causes of action arising out of Sovereign's honoring of checks with missing endorsements: (1) a conversion claim brought under the UCC and (2) a breach of contract claim brought under the underlying loan disbursement agreement. *See* Mass. Gen. Laws ch. 106, § 3-420(a). Plaintiffs have elected to bring only a breach of contract claim, apparently recognizing that a conversion claim under § 3-420 would almost certainly be time-barred.[5]

Defendant contends that plaintiffs' *only* possible claim arising out of the disputed acts is for conversion, on the grounds that the UCC preempts any common law claim involving a negotiable instrument. Defendant relies on *Jensen v. Essexbank*, 396 Mass. 65 (1985), and

---

[5] The limitations period for a claim of conversion of a negotiable instrument is three years after the cause of action accrues. Mass. Gen. Laws ch. 106, § 3-118(g). A cause of action accrues for these purposes when the plaintiffs discover, or reasonably should have discovered, that they have been harmed by the defendant's conduct. *LePage v. Shawmut Bank, N.A.*, 49 Mass. App. Ct. 1119 *1, *2 (2000).

Here, plaintiffs were aware of the missing endorsement on the $61,825 check no later than April 9, 2004. The record is less clear as to when plaintiffs first became aware (or should have become aware) of the missing endorsement as to the $22,300 check, but they were at least aware in December 2004, when the Chapter 93A demand letter was sent. Plaintiffs filed the complaint on September 21, 2007.

*Arkwright Mut. Ins. Co. v. State Street Bk. & Tr. Co.*, 428 Mass. 600 (1998), in support of that argument.

In *Jensen*, the plaintiff opened a checking account with the defendant bank and directed the bank to send the checkbook and all bank statements to the plaintiff's attorney. 396 Mass. at 65-66. The attorney, without plaintiff's knowledge, forged plaintiff's signature and drew multiple checks on the account. *Id.* at 66. The plaintiff brought breach of contract and negligence claims against the bank. The court found that plaintiff had failed to notify the bank of the forged checks within one year from the time that bank statements were available to him, and stated:

> The one-year period in § 4-406(4) [of the UCC] is not a statute of limitations which might not start to run until the plaintiff knew or should have known of his attorney's treachery, as the plaintiff argues. It is a statutory prerequisite of notice. It does not govern the time within which an action must be commenced but rather governs the time within which a party to a contract is obligated to act (in this case, give notice to the bank) . . . . it necessarily follows that the plaintiff's claims in contract and in negligence must fail.

*Id.* at 66-67.

In *Arkwright*, an employee of the plaintiff bank diverted multiple expense reimbursement checks to her own account at defendant bank. 428 Mass. at 601. After the plaintiff bank reimbursed the payees in the amount of the diverted funds, it claimed that the two defendant banks (the depository bank and the drawee bank) were negligent in paying funds to the employee on the basis of the misappropriated checks. *Id.* at 218-219. The court, relying on *Jensen*, held that Mass. Gen. Laws ch. 106, § 4-406(4) barred liability for failure to give timely notice. The court also explicitly noted a distinction between claims brought under the UCC and common-law claims that the UCC might govern only in certain respects:

> . . . § 4-406(4) states in broad terms that a bank customer in such circumstances "is precluded from asserting against the bank [an] unauthorized signature." Conspicuously

absent from this proscription is any language *limiting preclusion to actions arising under the UCC*. Thus, [the statute] bars the bank's liability regardless of the theory on which the plaintiff relies.

*Id.* at 221 (emphasis added).

These cases certainly stand for the proposition that the UCC supplants common-law causes of action as to the prerequisite of notice. *See*, *e.g., Jensen*, 396 Mass. at 66. They do not, however, compel the conclusion that all common-law causes of action are preempted in all cases involving negotiable instruments. Indeed, nothing in *Jensen* or *Arkwright* states or suggests that the common-law claims were preempted, whether or not the notice requirement had been met.

A more analogous situation was present in *General Motors Acceptance Corp. v. Abington Cas. Ins. Co.*, 413 Mass. 583, 588 (1992). There, an automobile insurer issued a check payable jointly to the vehicle owner and GMAC (which held a security interest in the vehicle and was the loss payee under the policy). The owner presented the check at the drawee bank without obtaining GMAC's endorsement. The drawee bank made payment to the owner and the drawer bank then honored the check. The court held that "payment of a check to one copayee without the endorsement of the other copayee does not discharge the drawer [i.e., the insurer] of either his liability on the instrument or the underlying obligation." 413 Mass. at 588. Accordingly, "because [the insurer's] obligation to [GMAC] as a joint payee is not discharged, [GMAC] . . . may sue on the underlying contract claim." *Id.*; *see also Kenerson v. FDIC*, 44 F.3d 19, 32 (1st Cir. 1995) (in dicta characterizing *Abington* as a case that held ". . . a payee could sue a drawer—under § 3-804 *or on the underlying contractual obligation*—where the instrument was drawn to the plaintiff and a co-payee and the drawer delivered the instrument to the co-payee, who absconded with the plaintiff's funds") (emphasis added). Although this case involves a check

7

issued directly by the drawer bank pursuant to a loan agreement, there appears to be no reason to require a different result. Accordingly, the UCC does not preempt plaintiffs' contract claim on the underlying loan disbursement obligation.

### 2. **Breach of Contract**

Defendant contends that the breach of contract claim, even if not preempted, is nonetheless not cognizable given the plain text of the disbursement agreement. The first count of the complaint asserts that (1) the loan disbursement procedures form signed by the parties is an enforceable contract, and (2) defendant breached the agreement by "allowing Yankee to negotiate two checks totaling $84,125, without obtaining the Cyrans' endorsement." (Complt., ¶¶ 25-26). Defendant contends that it fulfilled its express contractual duties, and that the contract does not create any obligation to honor or pay a disbursement check that has been negotiated and presented by a depository bank.[6]

Plaintiffs apparently do not dispute that defendant complied with the *express* terms of the "Procedures for Construction Loan Payouts" agreement. Under that agreement, when Sovereign received a "satisfactory inspection report," it was obligated to release loan funds in accordance with the Loan Advance Schedule. (*See* Complt, Ex. A, B). Defendant was further obligated to release funds in the following form: "[c]hecks will be made payable to the Borrower(s) and the Contractor and mailed to the Contractor." (*Id*. at Ex. B). Here, both disputed checks were made payable to both the plaintiffs and Yankee. *(Id.* at Ex. C, D). Both checks were mailed directly from the defendant to Yankee. (Complt., ¶¶ 13-14). These actions are clearly in accordance with

---

[6] For purposes of this motion only, defendant accepts plaintiffs' contention that the "Procedures for Construction Loan Payouts" document signed by the parties is a valid contract. (Deft. Mem. at 3).

8

(and required by) the literal language of the disbursement contract.

Plaintiffs, however, contend that a breach of contract claim is nonetheless viable because the loan disbursement contract impliedly required defendant to refrain from negotiating loan checks that were not signed by the plaintiffs.[7] It is plaintiffs' burden to establish that the contract contains an implied term. *See Bernard v. Cameron Colby Co.*, 397 Mass. 320, 321 (1986).

> Every instrument in writing is to be interpreted, with a view to the material circumstances of the parties at the time of the execution, in light of the pertinent facts within their knowledge and in such manner as to give effect to the main end designed to be accomplished . . . . [The] instrument is to be so construed as to give effect to the intent of the . . . [parties] as manifested by the words used illumined by all the attendant factors, unless inconsistent with some positive rule of law or repugnant to other terms of the instrument. An omission to express an intention cannot be supplied by conjecture. But if the instrument as a whole produces a conviction that a particular result was fixedly desired although not expressed by formal words, that defect may be supplied by implication and the underlying intention . . . may be effectuated, provided it is sufficiently declared by the entire instrument.

*Id.* at 321-322 (*quoting Dittemore v. Dickey*, 249 Mass. 95, 104-105 (1924)).  At this early stage of the proceedings, the Court is unable to state as a matter of law that the loan disbursement contract does *not* impliedly prohibit the defendant from negotiating improperly endorsed checks. The alleged implied term is not explicitly foreclosed by the language of the contract. Under the

---

[7] Plaintiffs also argue in their opposition that defendant made loan disbursements that were not listed in the Loan Advance Schedule. It is true that the Loan Advance Schedule contemplated a first disbursement in the amount of $14,795, and that the actual first disbursement was for $22,300. That theory of liability was not, however, alleged in the complaint. The "Breach of Contract" count of plaintiffs' complaint states:

> "The Procedures Agreement between Yankee, the Cyrans and Sovereign constituted a valid and binding contract . . . . Sovereign by allowing Yankee to negotiate two checks totaling $84,125 without obtaining the Cyrans' endorsement, breached the terms and conditions of the Procedures Agreement and the Cyrans have been damaged in an amount to be established [*sic*] trial of this matter."

(Complt., ¶¶ 25-26). Plaintiffs' theory of breach thus rests on defendant's alleged improper honoring of the checks, and not any improper calculation of the correct amounts as required by the Loan Advance Schedule.

9

plain language of the contract, checks were to be made out to both the plaintiffs and Yankee. (Complt., Ex. B). Special permission was required from the plaintiffs before the defendant could write a check payable *only* to Yankee. It is not implausible or unreasonable to contend that these clauses necessarily imply that defendant would later require *both* payee's signatures before it would release money from the loan account. *See, e.g.*, *Gustafson v. Wachusett Regional School Dist.*, 64 Mass. App. Ct. 802, 807 (2005) (no provision in a contract should be interpreted in such a way as to render it meaningless).

Such a determination cannot be made on the present record.[8] Plaintiffs accordingly have met their "relatively light burden to maintain a complaint in the face of a Rule 12(b)(6) motion." *Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 47 (1998).

### C.     Chapter 93A

In order to state a claim under Ch. 93A, a plaintiff must allege a "pernicious purpose," an "ulterior motive," or a "coercive or extortionate objective." *See, e.g., Framingham Auto Sales v. Workers' Credit Union*, 41 Mass. App. Ct. 416, 418 (1996). The actions of defendant need to fit "within a common law conception of unfairness [and must be] immoral, unethical, oppressive, or unscrupulous" in order to support a Ch. 93A claim. *See, e.g., Govoni & Sons Constr. Co. v. Mechanics Bank*, 51 Mass. App. Ct. 35, 51 (2001).

Here, plaintiffs contend defendant committed "unfair and deceptive acts" when it (1) failed to adhere to the "terms and conditions" of the disbursement contract and honored two checks without plaintiffs' endorsements; (2) admitted its breach of the disbursement contract but offered

---

[8] *Compare Pimental v. Wachovia Mortgage Corp.*, 411 F. Supp. 2d 32, 36-39 (D. Mass. 2006) (dismissing breach of contract claim because the proposed "implied term" was explicitly contradicted by the plain language of the contract).

to reimburse plaintiffs only if the depository bank reimbursed it; and (3) failed to make a reasonable offer of settlement in response to the plaintiffs' demand letter. (Complt., ¶ 29).

Chapter 93A requires more than a mistake or an honest dispute concerning a contract. *See Duclersaint v. Federal Mortgage Ins. Ass'n*, 427 Mass. 809, 814 (1998). Some level of bad faith must be present. *See Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 474 (1991). As to the failure to make an offer of settlement, "mere resistance to a just claim is not the stuff of 93A, except where made so by statute." *Framingham Auto Sales*, 41 Mass. App. Ct. at 418.

Here, as to the first and third grounds, plaintiffs have not pleaded that defendant conducted those acts with a "pernicious purpose," an "ulterior motive," or a "coercive or extortionate objective." *Id.* Breach of contract and refusal to settle, without more, are not *per se* unfair or deceptive acts. *See supra.* As to the second ground, plaintiffs allege the following:

> Sovereign, through its counsel, knowingly refused to credit the Cyrans' loan account unless Sovereign could first recover said $61,825 from Fleet Bank. Sovereign took this position even though it knew that applicable law clearly provided that because of the passing of more than 30 days from presentment of the check, Sovereign could never succeed in forcing Fleet Bank to reimbursement [*sic*] Sovereign . . . .
>
> Sovereign sent Exhibit "E" to two "layperson" consumers, the Cyrans, hoping it would dissuade the Cyrans from exercising their rights versus Sovereign. Exhibit "E" was, in the light most favorable to Sovereign, at best disingenuous, as Sovereign's counsel knew the law and also knew of Sovereign's obligations pursuant to the Procedures Agreement to require the Cyrans' endorsement on any check issued to Yankee and also knew the offer to seek reimbursement from Fleet Bank was without substance.

(Complt., ¶¶ 19-20). The contention that Sovereign lied about seeking reimbursement (or implied that receiving reimbursement from Fleet Bank was possible, when defendant knew it was not possible under any circumstances) states a facially sufficient claim under Chapter 93A. "Doubt or

misgivings about whether a claim can be ranked as provable (or even credible) . . . is not a proper basis for dismissal of [plaintiffs'] actions under Rule 12(b)(6)." *Wrightson v. Spaulding*, 20 Mass. App. Ct. 70, 72 (1988). The Chapter 93A claim accordingly is sufficient to survive a motion to dismiss.

### III.    Conclusion

For the foregoing reasons, the motion of defendant Sovereign Bank to dismiss for failure to state a claim is DENIED.

**So Ordered.**

                                                /s/   F. Dennis Saylor
                                              F. Dennis Saylor IV
                                              United States District Judge

Dated: June 10, 2008