UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ELIZABETH V. CYRAN and FRANKLIN J. CYRAN, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 07-40263-FDS |
| v. | ) ) ) | |
| SOVEREIGN BANK, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON
<u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**SAYLOR, J.**

This is an action for breach of contract and misrepresentation, with jurisdiction based on diversity of citizenship. Plaintiffs Elizabeth and Franklin Cyran allege that defendant Sovereign Bank improperly honored disbursement checks issued jointly to them and their construction contractor, notwithstanding the fact that they did not endorse the checks. The Cyrans assert claims for breach of contract (Count 1), fraudulent misrepresentation (Counts 2 and 4), negligent misrepresentation (Counts 3 and 5), and violation of Mass. Gen. Laws ch. 93A (Count 6).

Sovereign has moved for partial summary judgment as to Counts 2, 3, 4, and 5 on the grounds that the claims are barred by the applicable statute of limitations. For the reasons set forth below, the motion will be granted.

**I.   <u>Background</u>**

The following facts are presented in the light most favorable to plaintiffs, the non-moving parties.

On June 9, 2003, Franklin and Elizabeth Cyran entered into a construction contract with Yankee-Crafted Homebuilding, Inc., for the construction of a single-family residence in Hardwick, Massachusetts. (Doc. 35 ¶ 6).[1] The contract price for the home was $247,300. (*Id.* ¶ 7).

On July 15, 2003, the Cyrans entered into a mortgage loan agreement with Sovereign in the amount of $225,000 in order to pay for most of the construction. (Doc. 44 ¶ 1). Between August 6 and September 25, 2003, Sovereign made three construction loan disbursements by issuing checks made payable to both the Cyrans and Yankee. (*Id.* ¶ 2; Doc. 41, Ex. 2).

Without first obtaining the endorsement of the Cyrans, Yankee improperly negotiated two of those checks (dated August 12 and September 25, 2003) at Fleet Bank. (Doc. 41, Ex. 2). The August 12 check was for $22,300 and the September 25 check was for $61,825. (Doc. 35 ¶¶ 17, 19). Fleet Bank presented both checks to Sovereign, which honored and paid them. (Doc. 35 ¶¶ 18, 20). In addition, Sovereign imposed interest charges on the Cyrans from the dates the checks were issued to Yankee. (*Id.* ¶ 21; *see* Doc. 44 ¶ 7).

In October 2003, after Sovereign sent the Cyrans a loan statement, the Cyrans first discovered that Sovereign had improperly honored the September 25 check. (Doc. 44 ¶ 7). In October and November 2003, Elizabeth Cyran made multiple telephone calls to Sovereign. (*Id.* ¶ 8). During one of these conversations, Sovereign told the Cyrans that it would initiate a procedure to reclaim from Yankee's account at Fleet Bank the amount of the September 25 check. (*Id.*). During a later conversation, Sovereign expressly represented to the Cyrans that it actively seeking to reclaim the money from Yankee, but stated that the process could take a

---

[1] Citations are to the first amended complaint (Doc. 35).

2

period of time. (*Id.*).

In November 2003, Sovereign informed the Cyrans that Yankee's account did not contain any money and that, as a result, Sovereign could not reclaim the $61,825. (*Id.* ¶ 9). Sovereign therefore suggested that it issue the next scheduled disbursement, also in the amount of $61,825. (*Id.*). Once Yankee deposited the check into its account at Fleet, Sovereign would immediately reclaim those funds and credit the Cyrans' account. (*Id.*).

The Cyrans agreed, and on December 4, 2003, Sovereign issued a check in the amount of $61,825, and mailed it directly to the Cyrans. (*Id.* ¶ 10). They endorsed the check and delivered it to Yankee on December 10, 2003. (*Id.*). The Cyrans immediately informed Sovereign that the check had been delivered, and Sovereign confirmed that it would immediately make demand upon Fleet Bank to reclaim the money just paid to Yankee. (*Id.*). Despite its representation that it would "immediately" seek to reclaim the funds, Sovereign did not take any affirmative steps to seek reimbursement from Fleet until May 2004. (*Id.* ¶ 11).

On April 9, 2004, the Cyrans sent a letter to Sovereign stating that the bank had improperly negotiated the September 25 check without their endorsements and demanding a "reversal" of the check. (*Id.* ¶ 16; Doc. 41, Ex. 8). On April 27, a Sovereign representative informed the Cyrans that she was preparing to file a demand for reimbursement with Fleet:

> Please be advised that I am preparing and will file with Fleet Bank a demand for reimbursement for the face amount on the check on the basis that two necessary endorsements are missing from the reverse of the check.

(Doc. 41, Ex. 9). To assist in the recovery of the funds from Fleet, the Cyrans executed an affidavit of forgery on May 4, 2004. (*Id.*, Ex. 10). Sovereign informed the Cyrans that Fleet would not process the reimbursement claim absent the affidavit. (*Id.*, Ex. 13).

3

On May 6, 2004, Sovereign formally demanded reimbursement from Fleet by sending a demand letter and the Cyrans' affidavit. (*Id.*, Ex. 7). On May 14, 2004, Fleet denied Sovereign's written demand. (*Id.*, Ex. 11). Among other things, Fleet stated that the demand was untimely because it was made more than thirty days after Sovereign had reason to know that the check had been improperly honored. (*Id.*). Fleet stated:

> the Cyrans have informed Fleet Bank that they made Sovereign Bank aware of the situation in early October 2003. Therefore, your official notice of the claim to Fleet Bank in May 2004 clearly was not timely as you had reason to know of the alleged breach well in advance of that date.

(*Id.*). The letter went on to state that an "[e]xamination of Yankee's accounts demonstrates that as early as November 2003, our customer had sufficient funds on deposit to cover the alleged loss. However, presently there are insufficient funds on deposit to cover the stated amount." (*Id.*).

On May 19, 2004, Sovereign forwarded a copy of Fleet's denial letter to the Cyrans, along with a letter of its own stating that it was "not in a position to credit [the Cyrans's] construction loan account with the amount of the check." (*Id.*, Ex. 12). Sovereign "urge[d] [the Cyrans] to pursue [their] claim against [Yankee] directly." (*Id.*).

On September 27, 2007, the Cyrans sued Sovereign in Massachusetts state court, asserting claims for breach of contract and violation of Mass. Gen. L. ch. 93A. Sovereign removed the case to this Court on October 3, 2007. On August 4, 2009, the Cyrans filed an amended complaint adding four new claims against Sovereign: two counts each of fraudulent misrepresentation (Counts 2 and 4) and negligent misrepresentation (Counts 3 and 5). As a condition of filing the amended complaint, the Court instructed the Cyrans to include "specific

factual allegations as to the dates the [new] claims accrued, and that such dates are within the requisite three-year period preceding the complaint." (*See* July 29, 2009, Electronic Order).

## II.  Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

## III.  Analysis

In Counts 2, 3, 4, and 5, plaintiffs allege that Sovereign made various misrepresentations regarding its pursuit of a reimbursement claim against Fleet. Counts 2 and 3 allege fraudulent and negligent misrepresentation claims as to the September 25 check. Counts 4 and 5 allege fraudulent and negligent misrepresentation claims as to the December 4 check. Although the complaint is not always specific, plaintiffs appear to allege that Sovereign misrepresented (1) its intention to credit plaintiffs' account, (2) its intention to make immediate demand upon Fleet for return of the money, and (3) the lack of sufficient funds in Yankee's Fleet bank account to satisfy plaintiffs' claim.

Sovereign contends that all of the misrepresentation counts are barred by the applicable three-year statute of limitations. According to Sovereign, plaintiffs had actual notice of their claims no later than May 2004, more than three years prior to the September 27, 2007 filing of the complaint. At the very least, plaintiffs were on inquiry notice in May 2004, and had a duty to inquire further into the alleged misrepresentations. In response, plaintiffs invoke the discovery rule, which tolls the limitations period until such time as a reasonably prudent person in the plaintiffs' position would be aware that he or she has been harmed. In plaintiffs' view, their claims were inherently unknowable until May 2009, when discovery in this case revealed that the only action taken by defendant to seek reimbursement was the May 6, 2004 letter to Fleet. The Court agrees that the claims are untimely and that Sovereign is entitled to partial summary judgment.

A three-year limitations period applies to tort claims arising under Massachusetts law. Mass. Gen. L. ch. 260, § 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues."). As a general matter, a tort claim accrues at the time a plaintiff is injured. *Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir. 1991). However, the "so-called 'discovery rule' provides that the limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'" *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006) (quoting *Felton v. Labor Relations Comn'n*, 33 Mass. App. Ct. 926, 927 (1992). Thus, in the absence of actual notice of the injury, the discovery rule provides that the cause of action does not accrue until a plaintiff is on inquiry notice. *Id.* A plaintiff is on inquiry notice "when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands

of the defendant." *Id.* (citing *Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002)). Although defendant must establish a *prima facie* case of untimeliness, plaintiffs bear the burden "demonstrating that they did not know of the [injury] within the statute of limitations and that 'in the exercise of reasonable diligence, they should not have known.'" *Albrecht v. Clifford*, 436 Mass. 706, 715 (2002) (quoting *Friedman v. Jablonski*, 371 Mass. 482, 487 (1976)); *see O'Connor v. Redstone*, 452 Mass. 537, 551 (2008).

Sovereign has met its burden of establishing a *prima facie* case of untimeliness. The alleged misrepresentations it made all occurred in October, November, and December 2003. Specifically, Counts 2 and 3 allege fraudulent and negligent misrepresentations occurring in October and November 2003, while Counts 4 and 5 allege the same as to November 2003.[2] The original complaint in this case was filed on September 27, 2007, more than three years after the alleged misrepresentations. Accordingly, unless plaintiffs have met their burden of proffering facts that take this case "outside the impact of the statute of limitations, then the defendant is . . . entitled to summary judgment." *See O'Connor*, 452 Mass. at 551. Plaintiffs have not done so.

First, plaintiffs were clearly on inquiry notice no later than April 2004 that Sovereign may have misrepresented its intention to credit their account. On April 9, 2004, plaintiffs sent a letter informing Sovereign that it had "improperly negotiated a check in the amount of $61,825.00." (Doc. 41-3, Ex. 8). Plaintiffs attached a copy of the check to the letter and demanded a "reversal of the check." (*Id.*). If plaintiffs, in April 2004, were aware that Sovereign had yet to credit their

---

[2] The complaint also contains allegations that after plaintiffs endorsed the December 4 check and delivered it to Yankee, Sovereign "confirmed that it would immediately make demand upon Fleet Bank to reclaim those dollars."

account for the missing money, they must necessarily have been aware that Sovereign's contrary representations, made three to six months earlier, were false. At the very least, plaintiffs were had inquiry notice and a duty to further inquire (and indeed, the April 2004 letter appears to have been just such an inquiry).

Second, and even more compelling, Sovereign sent plaintiff a letter on May 19, 2004, indicating that, despite its contrary representations in October and November 2003, it had not made an immediate demand upon Fleet for reimbursement. The May 19 letter included a copy of Fleet's May 14 denial letter, in which Fleet explained that it was denying the claim, in part, because the demand was "not timely." (Doc. 41-3, Ex. 11). That statement plainly informed plaintiffs that Sovereign had not made a timely (and *immediate*) demand upon Fleet. At the very least, plaintiffs had a duty to inquire whether Sovereign had made any prior demands to Fleet and why Sovereign's formal claim was deemed untimely.

Finally, if Sovereign misrepresented the unavailability of funds in Yankee's Fleet account to satisfy plaintiffs' claim in October and November 2003, that misrepresentation was exposed in Fleet's denial letter. Among other things, the letter stated, "[e]xamination of Yankee's accounts demonstrates that as early as November 2003, our customer had sufficient funds on deposit to cover the alleged loss. However, presently there are insufficient funds on deposit to cover the stated amount." (Doc. 41-3, Ex. 11). Again, at the very least, further inquiry was surely warranted under the circumstances.

In response, plaintiffs contend that although they may have been aware that the September 25 check was unrecoverable, they were unaware (and were incapable of knowing) that Sovereign had taken no additional steps to recover the proceeds of the December 4 check. According to

plaintiffs, it was not until discovery in this case that they became aware that Sovereign had failed to take any other steps, oral or written, to reclaim the proceeds of the December 4 check. The Court is not persuaded.

As an initial matter, it was the September 25 check that was improperly negotiated, not the December 4 check. The former lacked plaintiffs' endorsements; the latter contained them. Moreover, the latter was issued in order to enable Sovereign to recover the proceeds of the former. In any event, even if Sovereign misrepresented its intention to recover the proceeds of the December 4 check, plaintiffs had actual and inquiry notice of this fact in May 2004. Fleet's denial letter made clear that it considered the matter closed. For its part, Sovereign urged plaintiffs to seek recovery directly from Yankee, a clear indication from Sovereign that it did not plan to take any additional steps to recover the proceeds of either check.[3] Moreover, plaintiffs received monthly loan statements from September 2003 through September 2004 (three years prior to the filing of this case), which reflected that Sovereign had not reimbursed plaintiffs' account for the September 25 check *or* the December 4 check. (Doc. 41-2, Ex. 4). Clearly, plaintiffs should have been alerted to the fact that Sovereign had misrepresented its intention to reclaim the proceeds of the December 4 check.

Accordingly, because plaintiffs were on both actual and inquiry notice of their misrepresentation claims no later than May 2004, Counts 2, 3, 4, and 5 of the complaint are precluded by the three-year statute of limitations set forth in Mass. Gen. Laws ch. 260, § 2A.

---

[3] Importantly, plaintiffs do not contend that, after the May 2004 letters, Sovereign made further misrepresentations regarding its pursuit of reimbursement. Thus, any misrepresentations made by Sovereign preceded, and were exposed by, the May 2004 letters.

### III.     Conclusion

For the foregoing reasons, the motion of defendant Sovereign Bank for partial summary judgment as to Counts 2, 3, 4, and 5 is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

Dated:  July 28, 2010